**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUAN MIGUEL MARIOTTI,<br><br>Plaintiff,<br><br>v.<br><br>HYATT HOTELS CORPORATION, *et al.*,<br><br>Defendants. | No. 26cv5 (EP) (LDW)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Juan Miguel Mariotti, a lawyer proceeding *pro se*, alleges that Defendant Cheryl Falat, the general manager of the Hyatt House hotel in Whippany, New Jersey, answered a subpoena by emailing his hotel records to the lawyer representing his child's mother, who had threatened Mariotti with violence and against whom he held a protective order. D.E. 1 ("Complaint" or "Compl.") ¶¶ 19–23. According to Mariotti, Falat went beyond the subpoena in two ways: she produced records predating the period the subpoena named, and she added that Mariotti was "still staying at our hotel." *Id.* ¶ 23 Mariotti sues Falat for intrusion upon seclusion, negligence, and negligent infliction of emotional distress ("NIED"). *Id.* Falat moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), primarily on the ground that she did nothing more than comply with a subpoena that a New York court had upheld.[1] D.E. 20-1 ("Motion" or "Mot.").

[1] Falats' Notice of Motion was filed at D.E. 20. The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the reasons below, the Court will **GRANT** the Motion as to the intrusion upon seclusion claim (Count I), which will be **DISMISSED *without prejudice***, and **DENY** the Motion as to the negligence and NIED claims (Counts III and IV, respectively).[2]

## I. BACKGROUND[3]

Mariotti, a New York citizen, was a top-tier member of Hyatt's loyalty program. Compl. ¶¶ 4, 11. From October 2023 through late May 2024, Mariotti stayed for varying stretches at the Hyatt House in Whippany, New Jersey (the "Hotel"), as well as at other Hyatt properties. *Id.* ¶¶ 34, 35, 37.

As a guest and loyalty program member, Mariotti was subject to Hyatt's Global Privacy Policy. *Id*., Ex. A (the "Privacy Policy") at 1; *see* Compl. at 13–15. The Privacy Policy reserves Hyatt's right to disclose a guest's personal information if "compelled to do so by a court of law or lawfully requested to do so by a governmental entity or if we determine it is necessary or desirable to comply with the law." Privacy Policy § 6.9. Mariotti alleges that Falat received and read both Letters before any records left the Hotel. Compl. ¶ 24.

Mariotti and Elizabeth Celestin, the mother of his child, were litigating custody in Nassau County Family Court. Compl. ¶ 17. According to Mariotti, Celestin had threatened him with physical violence, and he held two orders shielding him from her: an Address Confidentiality Order entered in July 2022 and a temporary order of protection entered on September 18, 2023. *Id.* ¶ 19(a)–(b).

---

[2] Mariotti asserts Count I against Hyatt as well as Falat, and asserts Counts II (breach of contract), V (New Jersey Consumer Fraud Act), and VI (unjust enrichment) against Hyatt alone. Compl. ¶¶ 40–45, 46–50, 60–71. Hyatt was served on September 8, 2026, has not appeared, and has not joined the Motion. D.E. 42.

[3] The facts in this Section are drawn from the Complaint and its exhibits, which the Court accepts as true for purposes of the Motion. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

On September 12, 2023, Matthew Seidner, a New York attorney representing Celestin, issued a subpoena duces tecum to the Hotel. *Id.* ¶¶ 16–17 & Ex. B (the "Subpoena"). The Subpoena "command[ed]" production of "[a]ny and all records pertaining to [Mariotti's] stay or stays at your hotel including, but not limited, to dates and times Mr. Mariotti checked in and out of the hotel, invoices, payments received, and communications between Mr. Mariotti and the hotel since March 1, 2023." *Id.* The Subpoena further warned that "failure to comply [was] punishable as a contempt of Court" under New York's Civil Practice Law and Rules. *Id.* The top of the Subpoena was captioned "Family Court of the State of New York" and directed production at Seidner's office by October 13, 2023. No judge or clerk signed the Subpoena, and no one submitted it to a New Jersey court or clerk for issuance of a New Jersey subpoena. Compl. ¶ 18(a), (c).[4]

Mariotti fought the Subpoena and moved to quash it in Family Court on October 10, 2023. Family Court Order at 1. The Family Court denied Mariotti's motion to quash, finding that the Subpoena was "relevant and material to the pending proceedings." *Id.* at 2. The Complaint does not mention the Family Court Order.

Mariotti also wrote two letters to the Hotel before the Family Court Order, one on October 4 and another on October 11, 2023, objecting to the Subpoena and asking the Hotel to refuse it. Compl. ¶¶ 19–20 & Exs. C ("First Letter"), D ("Second Letter"). The First Letter informed the Hotel that Celestin and her current husband had made "threats of physical force and violence" against Mariotti and that Mariotti had a temporary restraining order of protection against Celestin.

[4] Mariotti alleges that the Subpoena omitted the statement of "circumstances or reasons" that N.Y. C.P.L.R. 3101(a)(4) requires for a non-party subpoena. Compl. ¶ 18(d). The Subpoena itself contains such a statement. Where a plaintiff's own exhibit contradicts the allegations of the complaint, the exhibit controls. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

*See* First Letter. The Second Letter again objected to the Subpoena and contained the motion to quash. *See* Second Letter.

About three months later, on January 6, 2024, Falat (the Hotel's general manager) emailed Mariotti's hotel folios (the "Folios") to Seidner's associate. Compl. ¶ 22 & Ex. E ("Falat Email"). The Folios reached back to January 15, 2023, around six weeks *before* the March 1, 2023 start date in the Subpoena. Compl. ¶ 23. Falat's Email added that Mariotti was "still staying at our hotel" with a reservation running "1/4/24-2/1/24." Three days later, Seidner emailed Mariotti that he had "informed the [Family] Court of [Mariotti's] true address which is [his] room in the Hyatt hotel in New Jersey," and demanded Mariotti "provide any new location" if he moved. *Id.* ¶¶ 25–26.

Mariotti asserts three of six counts against Falat: intrusion upon seclusion (Count I); negligence (Count III); and NIED (Count IV). *Id.* ¶¶ 40–45, 51–59. According to Mariotti, Falat's disclosure of the Folios and his then-current reservation caused him to fear for his physical safety, forced him to relocate, cost him money for "enhancing his security," and left him with "anxiety, panic, sleeplessness, and persistent fear." *Id.* ¶ 39(a), (b), (e). The other three counts name Hyatt alone. *Id.* ¶¶ 46–50, 60–71. Hyatt was served on September 8, 2026, but has not appeared. D.E. 42; *see* Dkt. Falat's Motion is fully briefed.

## II. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims

are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In short, courts may consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).[5] Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although there is no "probability requirement," a plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555. An affirmative defense can support dismissal at the pleading stage only if the defense is "apparent on the face of the complaint." *Schmidt*, 770 F.3d at 249 (citation modified).

## III. DISCUSSION

Falat makes four arguments for dismissal: (1) her compliance with a court-upheld subpoena bars all of Mariotti's claims against her; (2) the economic loss doctrine bars recovery because the Privacy Policy is a contract; (3) she owed Mariotti no duty outside the Privacy Policy; and (4) Mariotti fails to plead each count on its own elements. Mot. at 9–22. The Court first resolves a threshold dispute about what materials it may consider and then turns to Falat's arguments.

[5] The Court takes judicial notice of the Nassau County Family Court's December 19, 2023 order denying Mariotti's motion to quash, D.E. 20-2, Ex. C (the "Family Court Order"), for the limited purpose explained in Section III.A.

### A. The Court Decides the Motion on the Pleadings and on the Existence of the Family Court Order

Mariotti asks the Court to exclude both the Subpoena and the Family Court Order or, alternatively, convert the Motion into one for summary judgment and permit discovery under Rule 56(d). Opp'n at 7–9. The Court denies both requests.

*First, t*he Subpoena is Mariotti's own exhibit—and an exhibit attached to a complaint is part of that pleading. Fed. R. Civ. P. 10(c).

*Second*, the Family Court Order is a public record, and the Complaint pleads facts regarding the motion to quash that the Order decided. Compl. ¶ 20. On a motion to dismiss, a court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (citation omitted). The Court therefore takes notice that the Family Court denied Mariotti's motion to quash on December 19, 2023, on a finding of relevance and materiality but does not take notice of any substantive facts. To be clear, the Court does not accept disputed factual findings from that order as true or consider other matters outside the permissible Rule 12(b)(6) record. *Id.* at 427 n.7.

### B. Subpoena Compliance Does Not Bar Mariotti's Claims As a Matter of Law

Falat's lead argument is that "[g]ood-faith compliance with a lawful subpoena after the compliance date and after the subpoena has been upheld by a court cannot serve as a predicate for the imposition of tort liability." Mot. at 11. Falat fails to cite a case supporting that broad proposition.[6] Moreover, Falat's compliance-as-defense theory is an affirmative defense, and "a

[6] The authorities cited by Falat are contract-excuse cases, cited for the proposition that a court order or government regulation may excuse performance of a contractual obligation. Mot. at 9–

complaint need not anticipate or overcome affirmative defenses." *Schmidt*, 770 F.3d at 248. Falat may only assert that defense if it is apparent on the face of the Complaint. *Id.* at 249. It is not for two reasons.

*First,* the Complaint plausibly alleges that the Subpoena imposed no enforceable obligation on the Hotel. Taken as true, Falat's position of complying with a "lawful" subpoena flatly fails because the Subpoena did not create an obligation in the first place. Under New Jersey's version of the Uniform Interstate Depositions and Discovery Act (UIDDA), an out-of-state attorney who wants records from a New Jersey custodian "may submit a foreign subpoena along with a New Jersey subpoena, in the name of the Clerk of the Superior Court," to a New Jersey attorney or to the Clerk. N.J. Ct. R. 4:11-4(b)(1); *see Catalina Mktg. Corp. v. Hudyman*, 459 N.J. Super. 613, 618 (App. Div. 2019). The request to the Clerk of the Superior Court or to a New Jersey attorney "create[s] the necessary jurisdiction in this State to enforce the subpoena; to quash or modify the subpoena; [and] to issue any protective order or resolve any other dispute relating to the subpoena." N.J. Ct. R. 4:11-4(b)(2). Put simply, a litigant in a New York action who wants records from a New Jersey custodian must obtain a New Jersey subpoena, and enforcement against that custodian proceeds in New Jersey courts.

The Subpoena satisfied none of those requirements. Here, Seidner (a New York lawyer) signed the Subpoena, a New York court's caption appears on it, and the only sanction the Subpoena threatened was contempt under New York law. *See* Subpoena. Mariotti adequately alleges that

10 (citing *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 N.J. 378, 390–91 (2002); *Directions, Inc. v. New Prince Concrete Constr. Co.*, 200 N.J. Super. 639, 643 (App. Div. 1985); *In re Martin Paint Stores*, 199 B.R. 258, 265–66 (Bankr. S.D.N.Y. 1996)). None concerns tort liability. The only tort decision cited by Falat, *Hirl v. Bank of Am., N.A.*, 401 N.J. Super. 573, 585 (App. Div. 2008), *aff'd on other grounds*, 198 N.J. 318 (2009), sustained a finding that a custodian's response to a subpoena was reckless. Falat's Reply reproduces the same argument without authority and concedes that "a denial of a motion to quash is not a mandatory production order." Reply at 6.

the Subpoena was never domesticated in New Jersey and therefore was not enforceable against the Hotel in New Jersey. Compl. ¶ 18(c); *see Crescenzo v. Crane*, 350 N.J. Super. 531, 534, 540–41 (App. Div. 2002) (reversing dismissal of claims against a records custodian who produced privileged records in response to a subpoena that did not comply with the governing rule), *certif. denied*, 174 N.J. 364 (2002).

*Second*, the Complaint alleges disclosure beyond the Subpoena's scope. The Subpoena sought records "since March 1, 2023." Subpoena. Falat allegedly produced records from January 15, 2023, Compl. ¶ 23(a), and told Seidner's associate that "the guest is still staying at our hotel," Falat Email. Thus, Falat sent information both *before* and *after* the Subpoena's request date range. Falat responds that Mariotti's then-current stay was "encompassed by the Subpoena," which reached "[a]ny and all records" of his stays. Mot. at 20–21. That may be true. But the pre-March 2023 records fall outside the Subpoena's date range. So whether Falat's Email confirmation of Mariotti's then-current presence disclosed information beyond the responsive Folios does not change that the pre-March 2023 records exceeded the Subpoena's request.

Indeed, courts have found that providing information beyond that requested in a subpoena to be tort worthy. In *Hirl*, for example, the Appellate Division held a bank was reckless for releasing information related to an account the subpoena did not name because "[t]he generous interpretation afforded the subpoena by [bank] personnel [was] contrary to the plain meaning of the language of the subpoena." 401 N.J. Super. at 586. Falat attempts to distinguish *Hirl* because the excess disclosure there concerned a minor's account. Reply at 8. But the key facts are directly

applicable here: the defendant received a subpoena and disclosed records beyond the subpoena's terms.[7]

Because Falat's compliance-as-defense theory is not apparent on the face of the Complaint, it does not apply, and therefore does not warrant dismissal of any count.

### C. The Economic Loss Doctrine Does Not Reach Mariotti's Claims

Falat next argues that because Mariotti calls the Privacy Policy a contract, every tort claim about the disclosure "sound[s] exclusively in contract" and is barred by the economic loss doctrine. Mot. at 12–14. The economic loss doctrine "prohibits the recovery in a tort action of economic losses arising out of a breach of contract." *Sun Chem. Corp. v. Fike Corp.*, 243 N.J. 319, 328 n.2 (2020). Its operative rule is that "a tort remedy does not arise from a contractual relationship *unless* the breaching party owes an *independent duty* imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002) (emphasis added).

The economic loss doctrine is not applicable here. "Generally speaking, tort principles are better suited to resolve claims for personal injuries or damage to other property," while "[c]ontract principles more readily respond to claims for economic loss caused by damage to the product itself." *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 627 (1997). Here, Mariotti pleads fear for his physical safety, emotional distress, humiliation, and the loss of the protection his court

---

[7] In Reply, Falat attempts to recast the compliance-as-defense theory as one of reasonable reliance. Reply at 6. She states her production was "objectively reasonable, particularly for a non-attorney records custodian who had received notice that the subpoena had been contested and judicially upheld." Reply at 6. Falat again cites no New Jersey authority adopting that standard.

Separately, Falat argues for the first time in Reply that Mariotti is collaterally estopped from relitigating the Subpoena. Reply at 3–4. An argument raised for the first time in a reply brief, however, is waived. *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). The Court will therefore not consider that argument.

orders were meant to provide. Compl. ¶ 39. Those injuries are personal and are not the benefit of any bargain. Moreover, Falat identifies no New Jersey decision applying the doctrine to personal injuries or any related injury of that kind.

Additionally, the economic loss doctrine "only applies to bar certain tort claims between parties to a contract." *SRC Constr. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 799 (D.N.J. 2013). Falat's own brief describes the Privacy Policy as a contract "which Ms. Falat was not party to in her individual capacity." Mot. at 20. A contract to which Falat is a stranger cannot convert her alleged torts into contract claims against her. The economic loss doctrine therefore does not bar any count against Falat.

### D. Mariotti Plausibly Alleges Negligence (Count III)

Negligence consists of four elements: "(1) the defendant owed a duty of care; (2) the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Fernandes v. DAR Dev. Corp.*, 222 N.J. 390, 403–04 (2015). Falat contests only the first element—duty. She argues that she "did not owe [Mariotti] any duty in her individual capacity" and that "any and all duties related to [Mariotti]'s Private Information was encompassed by the Privacy Policy." Mot. at 15. Whether a defendant owes a duty, and the scope of that duty, "are generally questions of law for the court to decide." *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014).

Whether Falat owed Mariotti any duty turns on the alleged warning and disclosure. Mariotti alleges he told Falat that he had been threatened with violence and held a protective order against Celestin, whose lawyer sought Mariotti's records. Compl. ¶¶ 19–23 & Exs. C–E. Falat nonetheless told that lawyer that Mariotti was living at the Hotel and produced records the Subpoena never requested. *Id.* The question for the Court is whether a hotel manager in that position owed the guest a duty of reasonable care not to make that disclosure.

New Jersey decides whether a duty exists by asking "whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993). That inquiry "involves identifying, weighing, and balancing" four factors: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution. *Id.* (citation modified). "Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." *J.S. v. R.T.H.*, 155 N.J. 330, 337 (1998).

Each factor under *Hopkins* supports the duty Mariotti's claim requires. *First,* the relationship of the parties is that of innkeeper and guest, one New Jersey has long treated as protective in nature. *See Nebel v. Avichal Enters., Inc.*, 704 F. Supp. 570, 575–76 (D.N.J. 1989) (placing the innkeeper-guest relationship among those that "require a defendant to guard his charge against harm from others," and describing the innkeeper's duty of "ordinary care" toward guests). *Second, t*he nature of the risk was potential physical harm by Celestin, who was already subject to a protective order. On the Complaint's allegations, risk of potential physical harm was indeed foreseeable because Mariotti's letters described that risk and enclosed the protective orders. Compl. ¶ 19 & Ex. C.

*Third*, Falat had the opportunity to exercise reasonable care. Actual knowledge "can be extremely important in considering the fairness in imposing a duty of care." *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 576–77 (1996). Falat knew of the risk of physical harm from Mariotti's Letters. The burden of care was simple. Falat could have withheld production until the process issued that compelled it; she could have confined any production to the period the Subpoena named; and she could have refrained from confirming (in her own words) that Mariotti

was then staying at the Hotel. And *Fourth*, the public interest also cuts toward the duty. *See Sacharow v. Sacharow*, 177 N.J. 62, 67 (2003) (discussing that New Jersey's Legislature has enacted a program that "protects abuse victims by shielding their locations from their abusers").

Falat contends that the Privacy Policy is the exclusive source of any duty she owed. Mot. at 15. That contention fails for the reasons given in Section III.C. "[R]elationships created by contract can give rise to affirmative duties imposed by law" like the innkeeper duty owed by Falat here. *Saltiel*, 170 N.J. at 311. The Privacy Policy also reserves disclosure when Hyatt is "compelled" by a court or determines disclosure "necessary or desirable to comply with the law." Privacy Policy § 6.9. That reservation does not itself resolve whether Falat exercised reasonable care under the circumstances alleged because, as discussed, Falat provided more information than the Subpoena requested. Moreover, the Privacy Policy applies when Hyatt is "compelled" by a court—which was not the case here.

Falat does not contest the remaining elements of negligence. The Court therefore does not reach them. Because Falat's duty argument does not warrant dismissal, the Motion is **DENIED** as to Count III.

### E. Mariotti Plausibly Alleges Negligent Infliction of Emotional Distress (Count IV)

NIED "can be understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989). Its elements track negligence, with one addition: Mariotti must have "suffered severe emotional distress" that the defendant's breach proximately caused. *Johnson v. City of Hoboken*, 476 N.J. Super. 361, 375–76 (App. Div. 2023). The alleged severe emotional distress "must be reasonably foreseeable" from the "tortious conduct." *Decker*, 116 N.J. at 429–30.

Duty and foreseeability follow from Section III.D. *Decker* is instructive on Mariotti's NIED claim. 116 N.J. at 429. There, the New Jersey Supreme Court denied recovery to a woman distressed by a false obituary because the newspaper's conduct "was not occasioned by conduct that itself was egregious or purposeful" but "inadvertent conduct." 116 N.J. at 431. By comparison, Mariotti alleges he made a specific warning of threatened violence. Compl. ¶¶ 19, 21. Falat "received and read" Mariotti's Letters before she disclosed anything. *Id.* Having read the Letters, Falat knew that Celestin had threatened Mariotti with violence and was subject to a protective order. *Id.* Serious distress from telling Celestin's lawyer where Mariotti was living was plausibly foreseeable to a reasonable person in Falat's position.

Whether emotional distress is severe requires separate analysis. "[T]he court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 367 (1988). Distress amounting to "nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep," with no claimed "interference with [one's] every day routine," is insufficient as a matter of law. *Id.* Falat argues that Mariotti's "sleeplessness and anxiety fall" as insufficiently severe for an NIED claim. Mot. at 22. If that were all Mariotti pleaded, she would be right. But Mariotti also alleges that he feared for his physical safety because his location had been given to people who had threatened him, that the disclosure "forc[ed] him to relocate," and that he incurred the cost of "enhancing his security." Compl. ¶ 39(a), (e).

Some circumstances carry "an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Strachan v. John F. Kennedy Mem'l Hosp.*, 109 N.J. 523, 537 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 54, at 362 (5th ed. 1984)). Learning that Mariotti's

whereabouts were handed to Celestin, who was under a protective order for threatening violence, is such a circumstance. *Cf.* *Whittaker v. Ct. Servs. & Offender Supervision Agency for D.C.*, 401 F. Supp. 3d 170, 186–87 (D.D.C. 2019) (sustaining an emotional distress claim where the defendant may have disclosed the plaintiff's new address to a man who had assaulted and threatened her). A reasonable factfinder could find the resulting distress genuine and substantial.

Mariotti has alleged enough for his NIED claim. The Motion is therefore **DENIED** as to Count IV.

### F. Mariotti Does Not Plausibly Allege an Intrusion Upon Seclusion (Count I)

The Court next analyzes Mariotti's intrusion upon seclusion claim (Count I). New Jersey has adopted Restatement (Second) of Torts § 652B, which provides that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94–95 (1992). Intrusion upon seclusion has three elements: "(i) an intentional intrusion (ii) upon the seclusion of another that is (iii) highly offensive to a reasonable person." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 293 (3d Cir. 2016).

Mariotti's pleading defect lies in the first element. Intrusion upon seclusion is a tort premised on prying. Intrusion is exemplified by "invading his or her home, illegally searching, eavesdropping, or prying into personal affairs," while "making public private information about plaintiff" is the separate tort of public disclosure of private facts. *Rumbauskas v. Cantor*, 138 N.J. 173, 180 (1994). Fatally, Mariotti does not allege that Falat pried or intruded. He gave Hyatt his information as a guest and loyalty member. Compl. ¶ 11. The Complaint pleads the intrusion itself as an act of disclosure: Defendants "intruded upon [Mariotti]'s solitude, seclusion, and

private affairs by disclosing" his information to third parties. Compl. ¶ 42; *see Bisbee v. John C. Conover Agency, Inc.*, 186 N.J. Super. 335, 340 (App. Div. 1982) ("[T]here is no wrong where defendant did not actually delve into plaintiff's concerns.").

Accordingly, Count I will be **DISMISSED *without prejudice*** as to Falat.

### G. Mariotti's Requests to Strike and for a Show-Cause Order Are Denied

Mariotti asks the Court to strike, under Rule 12(f), the unpleaded notice assertion and other matter in Falat's brief. Opp'n at 26. Rule 12(f) authorizes a court to strike a matter "from a pleading." A brief is not a pleading, Fed. R. Civ. P. 7(a), and courts in this District do not apply Rule 12(f) to motion papers. *See, e.g., Puricelli v. Barkan*, No. 20-16068, 2022 WL 92807, at *9 (D.N.J. Jan. 10, 2022) (denying a motion to strike a motion to dismiss because Rule 7's list of pleadings does not include motions or the briefs supporting them). The remedy for an unsupported assertion in a brief is to disregard it, which the Court has done. *See supra* Section III.A.

Mariotti also asks the Court to issue an order to show cause, under Rule 11(c)(3), on the ground that Falat's papers overstate the factual sequence, misapply cases, omit relevant cases, and seek dismissal *with prejudice*. Opp'n at 27–28. Rule 11 "must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). Sanctions are appropriate only in the "exceptional circumstance" in which a filing "is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010) (citation modified). Mariotti's frustration is not baseless. Falat's briefing asserts several propositions without citing any authority, cites Complaint paragraphs and a conversion count that do not exist, Mot. at 12, and rests on a sequencing fact found nowhere in the Complaint, *see supra* Section III.A. The Court has accounted for those shortcomings by giving unsupported assertions no weight. A brief that

falls short of persuasive is not one that is patently unmeritorious or frivolous, and Rule 11 reaches only the latter. The conduct Mariotti identifies is ordinary advocacy, imperfectly executed. Accordingly, the Court declines to issue an order to show cause.

## IV. CONCLUSION & ORDER

For the foregoing reasons,

**IT IS**, on this 21st day of September, 2026,

**ORDERED** that Defendant Cheryl Falat's Motion to Dismiss, D.E. 20, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the Motion is **GRANTED** as to Count I; and it is further

**ORDERED** that Count I of the Complaint is **DISMISSED** ***without prejudice*** as to Falat; and it is further

**ORDERED** that the Motion is **DENIED** as to Counts III and IV; and it is further

**ORDERED** that Plaintiff Juan Miguel Mariotti may file an amended complaint within **30 days** after entry of this Order; if Plaintiff does not do so, Count I will be deemed dismissed ***with prejudice*** as to Defendant Falat, and Defendant Falat shall answer Counts III and IV within **14 days** after the expiration of Mariotti's 30-day deadline; if Plaintiff amends, Defendant Falat shall respond to it within the time provided by Federal Rule of Civil Procedure 15(a)(3); and it is finally

**ORDERED** that Plaintiff's requests that the Court exclude the Subpoena and the Family Court Order, convert the Motion, strike matter from Defendant Falat's papers, and issue an order to show cause under Rule 11(c)(3) are **DENIED**.

Evelyn Padin, U.S.D.J.